IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**JOYCE JUSTUS,**

    **Plaintiff,**

v.                                            Case No.: 2:12-cv-00956

**ETHICON, INC., et al,**

    **Defendants.**

## MEMORANDUM OPINION and ORDER

Pending before the court is Plaintiff's Motion to Compel Return of Inadvertently Disclosed Attorney-Client Communication and to Strike Portions of the Supplemental Report of Dr. Rebecca Ryder. (ECF No. 110). Defendants have filed a response in opposition to the motion, and Plaintiff has replied.[1] (ECF Nos. 117, 118). Having fully considered the arguments of counsel, the court **DENIES** Plaintiff's motion.

### I.    Relevant Facts

On or about February 29, 2016, Plaintiff traveled from her home in Black Mountain, North Carolina to Chesapeake, Virginia for a Rule 35 medical examination at the office of Dr. Rebecca Ryder, a physician expert selected by Defendants. Plaintiff

---

[1] In her reply brief, Plaintiff urges the court to disregard Defendants' response in opposition to the motion on the basis that it was filed too late. However, Defendants' response was timely filed. Under L. R. Civ. P. 7.1(a)(7), Defendants had fourteen days from the date of service of the motion in which to file a responsive memorandum. The motion was filed electronically on March 23, 2016. Pursuant to Fed. R. Civ. P. 6(d), when a motion is served electronically (under Rule 5(b)(2)(E)), three days are added to the response time. In this case, fourteen days expired on April 7, 2016. Three days were added under Rule 6(d), making April 10, 2016 the due date of Defendants' response. Given that April 10, 2016 fell on a Sunday, Defendants had until Monday, April 11, 2016 in which to file their response. *See* Fed. R. Civ. P. 6(a)(1)(C). Defendants filed their opposition brief on April 8, 2016. Consequently, it was not late, and the undersigned has considered the response in ruling on Plaintiffs' motion.

arrived at Dr. Ryder's office at 8:30 a.m., the time designated for the examination, only to be told by Dr. Ryder's staff that the doctor was not in the office and was not expected to arrive until later that afternoon. In an effort to prove that she had an appointment that morning, Plaintiff handed Dr. Ryder's staff some paperwork that she had in her possession, including a letter from Plaintiff's attorney, which confirmed the date and time of the medical examination and provided Plaintiff with various instructions on "what [she] should do to protect [her] claim" (the "Letter"). (ECF No. 110-2 at 2). Dr. Ryder's staff copied the paperwork, placed it in Plaintiff's chart, and returned the originals to Plaintiff. Apparently while this was going on, the staff became aware that Dr. Ryder was present in the office after all, and the medical examination went forward as scheduled. Dr. Ryder subsequently reviewed the Letter as part of the Rule 35 examination, and she commented on certain passages of the Letter in her Rule 35 report. Plaintiff now moves the court to (1) order Dr. Ryder to return the copy of the Letter in her possession, and (2) strike the portions of Dr. Ryder's report that reference the Letter.

## II.    The Parties' Positions

Plaintiff argues that the Letter is clearly an attorney-client communication and, consequently, is privileged. She maintains that the privilege was not waived by her disclosure of the Letter, because the disclosure was inadvertent; she took reasonable precautions to safeguard the communication; and she promptly took reasonable steps to rectify the error once she realized an unintentional disclosure had occurred. According to Plaintiff, she produced the letter to Dr. Ryder's staff in a moment of confusion and anxiety when she was incorrectly told that she did not have a scheduled appointment with Dr. Ryder. Plaintiff stresses that she did not intend for the staff to copy the Letter, and as soon as she learned that Dr. Ryder had a copy of the letter, she requested that it be returned to

2

her. Plaintiff refers to PTO #11, the clawback order, pointing out that she has fully complied with its terms and conditions and is entitled to the order's protections.

In response, Defendants argue that significant portions of the Letter are not covered by the attorney-client privilege because "they are factual in nature and do not involve legal advice." (ECF No. 117 at 6). Nevertheless, Defendants contend that any applicable privilege was waived by Plaintiff when she voluntarily gave the letter to Dr. Ryder's staff. Defendants add that even if Plaintiff's action in this regard could be construed as "inadvertent," the privilege was waived again when Plaintiff's counsel later wrote to defense counsel discussing the Letter in detail and then filed the Letter as an Exhibit to the instant Motion to Compel, where it has been available on the court's docket for review by the general public since March 23, 2016.

### III. Analysis

Defendants cite no case law in support of their position that a significant portion of the Letter is not privileged as an attorney-client communication, and the undersigned finds this position to be unpersuasive. While it is true that the scheduling particulars of a Rule 35 examination do not typically merit a privilege from disclosure, there are times when factual information is so integral to the overall communication that the attorney-client privilege will shield the entire exchange. *See Cont'l Cas. Co. v. Am. Home Assur. Co.*, No. CIV.A. 2:00-0260, 2010 WL 692942, at *6 (S.D.W.Va. Feb. 23, 2010). In any event, Plaintiff's counsel undoubtedly intended the Letter to be kept confidential by her client. Moreover, a substantial portion of the Letter was devoted to counsel providing guidance to her client on how to manage the medical examination so as to best "protect" her claim. Therefore, the undersigned accepts Plaintiff's assertion that the Letter is a privileged attorney-client communication.

3

Having determined that the Letter is privileged, the next question is whether Plaintiff waived the privilege by giving the Letter to Dr. Ryder's staff. Plaintiff contends that she did not waive the privilege, because the disclosure was inadvertent. She admits that she intended to show Dr. Ryder's staff the portion of the letter confirming the date and time of the appointment, but in her confusion and distress, she mistakenly gave them the entire document. In addition, Plaintiff emphasizes that she never gave Dr. Ryder's staff permission to copy and use the Letter.

"Few cases in the Fourth Circuit address what constitutes inadvertent disclosures, or even explicitly define the term '"inadvertent."' *Francisco v. Verizon S., Inc.*, 756 F. Supp.2d 705, 718-20 (E.D. Va. 2010), *aff'd,* 442 F. App'x 752 (4th Cir. 2011) (collecting cases). However, one unpublished decision in this circuit compared an intentional, although mistaken, waiver with an inadvertent waiver caused by an unintentional disclosure, stating:

> An inadvertent waiver would occur when a document, which a party intended to maintain confidential, was disclosed by accident such as a misaddressed communication to someone outside the privilege scope or the inadvertent inclusion of a privileged document with a group of nonprivileged documents being produced in discovery. In contrast, when a client makes a decision—albeit an unwise, or even mistaken, decision-not to maintain confidentiality in a document, the privilege is lost due to an overall failure to maintain a confidence.

*Id.* (citing *McCafferty's, Inc. v. Bank of Glen Burnie,* Case No. MJG–96–3656, 1998 U.S. Dist. LEXIS 12861, at *4–*5 (April 23, 1998)). Here, Plaintiff voluntarily shared the Letter with Dr. Ryder's staff. Thus, she made a decision not to maintain its confidentiality. Although Plaintiff may have been upset and concerned about the scheduling mix-up, nothing in the record suggests that she was legally or mentally incompetent at the time she handed the Letter to individuals outside of the privilege scope. Accordingly, Plaintiff's

4

act of disclosing the Letter constituted a waiver of the privileged communication.

Even if the undersigned were to assume that Plaintiff's disclosure was inadvertent, a finding that the privilege was waived would still be in order. Under Fed. R. Civ. P. 502(b), a disclosure that would otherwise constitute a waiver of the attorney-client privilege will not operate as a waiver if (1) the disclosure was inadvertent; (2) the holder of the privilege took reasonable steps to prevent disclosure and (3) the holder promptly took reasonable steps to rectify the error, including, for example, requesting a "claw-back" of a disclosed document pursuant to Fed. R. Civ. P. 26(b)(5)(B). In evaluating whether these conditions exist in any given case, courts apply multifactorial tests, such as the one adopted by the District Court of Maryland in *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 250 F.R.D. 251 (D.Md. 2008). In *Victor Stanley,* the Court balanced the following five factors to determine if a disclosure resulted in a privilege waiver: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the number of inadvertent disclosures; (3) the extent of the disclosures; (4) any delay in measures taken to rectify the disclosures; and (5) overriding interests in justice. *Victor Stanley, Inc.,* 250 F.R.D. at 259. The reasonableness exercised by the privilege holder in protecting and asserting the privilege is key to overcoming the consequences of an inadvertent waiver.

In this case, Plaintiff failed to take reasonable precautions to prevent disclosure of the Letter. She physically delivered the Letter to Dr. Ryder's staff without making any effort to limit the staff's access to the information contained in the Letter. Indeed, if Plaintiff's intent was to simply demonstrate that she was correct about the date and time of her appointment, she could have shown the staff only the first paragraph of the Letter, rather than handing them all three pages of the document. Unlike most inadvertent disclosure cases, the Letter was not one of thousands of documents in Plaintiff's

5

possession that she accidently disclosed with non-privileged materials, and she was not pressured to produce the Letter by Dr. Ryder's staff. Instead, Plaintiff made a conscious choice to share the information. Furthermore, Plaintiff's counsel did not label the Letter as "privileged," or otherwise identify it as an attorney-client communication so as to alert Dr. Ryder's staff of its confidential nature. Although counsel specifically instructed Plaintiff in the Letter to safeguard certain documents that had been provided to her, counsel provided no such instruction relative to the Letter itself.

In addition, the extent of the disclosure supports a finding of waiver. *See Fed. Deposit Ins. Corp. v. Marine Midland Realty Credit Corp.*, 138 F.R.D. 479, 483 (E.D. Va. 1991) (finding that waiver is the likely result when disclosure is "complete"). Not only did Dr. Ryder's staff read the letter, but Dr. Ryder reviewed counsel's advice to Plaintiff and assessed the reliability of Plaintiff's subjective complaints in the context of that advice. Dr. Ryder then shared the Letter with defense counsel, who wrote to plaintiffs' leadership and liaison counsel, complaining about the directives in the Letter. Of course, the Letter was attached to defense counsel's correspondence, so additional individuals outside of the privilege scope were made privy to the confidential communication. Plaintiff's counsel subsequently wrote to defense counsel, responding to the complaint. In that response, Plaintiff's counsel freely discussed the substance of the Letter, addressing specific areas of concern raised by defense counsel. Since that time, the Letter has been attached as an exhibit to at least two documents filed with this court and, thus, has been publicly available to any individual accessing the court's docket.

Finally, while Plaintiff's counsel reacted promptly upon learning that her client had disclosed the Letter, fairness weighs in favor of waiver. The Letter contained certain directives on how Plaintiff should manage the medical examination; for example, certain

6

requests to make, tests to refuse, and answers to give to particular questions. (ECF No. 110-2 at 2). Judging by Dr. Ryder's Rule 35 report, Plaintiff complied with some of these directives. Considering that disclosure of the Letter's directives to Dr. Ryder played a role in her medical evaluation and report, the Letter cannot be fairly excised from evidence. Therefore, Plaintiff's motion to compel return of the Letter and to strike portions of Dr. Ryder's report is denied.

The Clerk is instructed to provide a copy of this Order to counsel of record.

**ENTERED:** April 13, 2016

_____
Cheryl A. Eifert
United States Magistrate Judge